1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

JOSEPH P. CUVIELLO and
10  DENIZ BOLBOL, individually,

11                                  NO. CIV. S-07-1625 LKK/KJM
            Plaintiffs,
12
        v.
13                                      O R D E R
CITY OF STOCKTON, a public
14  entity, INTERNATIONAL FACILITIES
GROUP (IFG), a corporation dba
15  IFG-STOCKTON, INC., STOCKTON
POLICE OFFICER LT. TRULSON,
16  STOCKTON ASSISTANT CITY ATTORNEY
MICHAEL RISHWAIN, and DOES 1-40
17  in their individual and official
capacities, jointly and severally,
18
            Defendants.
19  _____/

20          Plaintiffs are individuals who have brought suit against

21  the City of Stockton, various city officials, and the International

22  Facilities Group ("IFG"), alleging violations of their rights of

23  free speech under the United States and California Constitutions

24  in conjunction with their attempts to videotape and speak to the

25  public outside of performances of the Ringling Bros. - Barnum &

26  Bailey Circus ("Ringling Bros."). They seek damages, declaratory

1

1  relief, and injunctive relief.

2      Pending before the court is the plaintiff's motion for a

3  preliminary injunction to enjoin defendants from infringing on

4  plaintiffs' rights during the September 2008 circus performance in

5  Stockton and a motion for declaratory relief. For the reasons

6  discussed herein, the court grants the motion for a preliminary

7  injunction but defers declaratory relief to a full trial.

8                  **I. BACKGROUND AND FACTS[1]**

9      Plaintiffs are individuals who assert they have an interest

10 in the welfare of animals and, to that end, have engaged in certain

11 activities when the Ringling Bros. Circus has performed at the

12 Stockton Arena in 2006 and 2007. Complaint ¶ 24; Declaration of

13 Deniz Bolbol in Support of Plaintiff's Motion for Preliminary

14 Injunction and Declaratory Relief ("Bolbol Decl.") ¶ 3; Declaration

15 of Joseph Cuviello in Support of Plaintiff's Motion for Preliminary

16 Injunction and Declaratory Relief ("Cuviello Decl.") ¶ 3.

17 Specifically, they have passed out leaflets to patrons and

18 videotaped animals outside of the arena. Bolbol Decl. ¶ 3; Cuviello

19 Decl. ¶ 3.

20  ────────────

21      [1]Defendant IFG objects to plaintiffs' submission of a DVD
   containing video clips, offered as Exhibit A to the Declaration of
   Joseph Cuviello in support of plaintiffs' motion. IFG contends that
22 these video clips were not disclosed as part of plaintiffs' initial
   disclosures, the deadline for which was March 7, 2008. See Order,
23 Feb. 6, 2008, at 1. For this reason, the court disregards this
   exhibit in resolving the instant motion.

24      Defendants also objected to several items of evidence offered
   by plaintiffs in support of the motions. Some of the evidence to
25 which defendants object is irrelevant to the court's analysis of
   the motions. To the extent that the evidence is relevant,
26 defendants' objections are OVERRULED.

                           2

1    The plaintiffs have presented evidence regarding their

2   attempts at communicating with circus patrons and videotaping near

3   the Stockton Arena at the time of the 2006 circus. On August 28,

4   2006, Bolbol and Cuviello observed that part of West Washington

5   Street was closed, near the Arena. Bolbol Decl. ¶¶ 4-5; Cuviello

6   Decl. ¶¶ 4-5. Bolbol was prohibited by Stockton Police officers

7   from accessing the blocked portion of the street.[2] Bolbol Decl. ¶

8   5. She videotaped this interaction. <u>See</u> Cuviello Decl., Ex. A.

9    On August 31, 2006, Bolbol and Cuviello approached the Arena

10  for the purpose of holding signs and banners and distributing

11  information to circus patrons. Bolbol Decl. ¶ 6; Cuviello Decl. ¶

12  6. Once on the Arena property,[3] plaintiffs were approached by

13  Stockton Police Lieutenant Trulsson, who informed plaintiffs that

14  the area was private property and if the Arena staff believed

15  plaintiffs to be trespassing, it is Stockton Police policy to honor

16  this as a citizens' arrest. Bolbol Decl. ¶¶ 7-8; Cuviello Decl. ¶¶

17  8-9. The plaintiffs videotaped this encounter. <u>See</u> Cuviello Decl.,

18  Ex. A.

19   After being turned away, Bolbol went to the Arena's back

20  parking lot. Bolbol Decl. ¶ 10. There, an IFG representative

21

22      [2]The plaintiffs have admitted that IFG did not prevent them
     from accessing this area. Rizzardi Decl. ¶ 2, Ex. B-C.

23      [3]The City of Stockton owns the Arena and area surrounding it,
     but leases it to IFG, who manages it. Drake Decl. ¶ 3, Ex. A. The
24   plaintiffs do not precisely describe which areas around the Arena
     they tried to enter, but describe them as the queuing areas at the
25   front and back entrances of the Arena and near the "animal open
     house." <u>See</u> Drake Decl. Ex. F (deposition of Joseph Cuviello at
26   167:10-168:2).

1  informed Bolbol that she could not be on Arena property without a
2  ticket. <u>Id.</u> Bolbol left the property. <u>Id.</u> She videotaped this
3  encounter. <u>See</u> Cuviello Decl., Ex. A.

4      On September 2, 2006, Bolbol returned to the Arena property
5  to hand out leaflets to patrons. Bolbol Decl. ¶ 11. She was
6  approached by an IFG representative, who informed her that she
7  would be held for trespass if she was on the property without a
8  ticket. <u>Id.</u> She left the property. <u>Id.</u> This encounter was also
9  videotaped. <u>See</u> Cuviello Decl., Ex. A.

10     In September 2007, the Ringling Bros. circus returned to the
11 Stockton Arena. Prior to the circus' arrival, the Stockton
12 Assistant City Attorney requested a phone conference in which
13 plaintiffs participated. Cuviello Decl. ¶ 12. Other employees of
14 the City of Stockton and of IFG also participated. Declaration of
15 Kimberly Drake In Support of Defendants City of Stockton, Michael
16 Rishwain and Lt. Chris Trulsson's Opposition to Plaintiff's Motion
17 for Preliminary Injunction ("Drake Decl.") ¶ 7, Ex. E (deposition
18 of Deniz Bolbol at 98:8-98:25). Plaintiffs informed the Assistant
19 City Attorney that they had received a preliminary injunction from
20 the Northern District of California in a case they believed was
21 similar and provided a copy of the injunction to her. <u>Id.</u>; <u>see also</u>
22 Declaration of Jonathan Rizzardi in Support of Defendant
23 International Facilities Group's Opposition to Plaintiffs' Motion
24 for Preliminary Injunction ("Rizzardi Decl.") ¶ 10. Later, they met
25 with Stockton Police Lieutenant Paoletti, who agreed to allow
26 plaintiffs the access they sought around the Arena. Cuviello Decl.

1    ¶ 12; see also Rizzardi Decl. ¶ 10.

2         Once Ringling Bros. had arrived, Cuviello again sought to

3    engage in the leafletting and videotaping around the Arena, which

4    he had endeavored to do the previous year. Cuviello Decl. ¶ 13. At

5    one street, he was initially not permitted access to a portion that

6    had been blocked off. Id. However, Lieutenant Paoletti arrived and

7    permitted plaintiff's access. Id. A few days later, Cuviello again

8    accessed the street, although a police officer and Ringling Bros.

9    representative attempted to stop him. Id. He also accessed the area

10   around the Arena where patrons were waiting in line, from which he

11   had been restricted the previous year. Drake Decl. ¶ 8, Ex. F

12   (deposition of Joseph Cuviello at 168:14-168:25).

13        Plaintiff  Bolbol  acknowledged  in  her  deposition  that

14   plaintiffs "were able to exercise their rights in 2007 on the

15   [Arena] property." Rizzardi Decl. ¶ 9. She also acknowledged that

16   City officials were no longer acting with deliberate indifference

17   to protect the constitutional rights of people within the City, as

18   plaintiffs had alleged in their complain. Drake Decl. ¶ 7, Ex. E

19   (deposition of Deniz Bolbol at 187:11-187:22).

20                            **II. STANDARDS**

21   **A.    Standard for a Preliminary Injunction**

22        A preliminary injunction may issue if the movant shows either

23   "a  combination  of  probable  success  and  the  possibility  of

24   irreparable  harm,  or  that  serious  questions  are  raised  and  the

25   balance of hardship tips in its favor." Prudential Real Estate

26   Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 874 (9th Cir.

1  2000). At a minimum, the movant must show "a fair chance of success

2  on the merits, or questions serious enough to require litigation"

3  and a significant threat of irreparable injury. Arcamuzi v.

4  Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987). The

5  Ninth Circuit conceives this standard as "two interrelated legal

6  tests" operating along a continuum. Lopez v. Heckler, 713 F.2d

7  1432, 1435 (9th Cir. 1983). At one end of the continuum, the moving

8  party may succeed if it shows that there is a probability of

9  success on the merits as well as a possibility of irreparable

10 injury. Golden Gate Restaurant Ass'n. v. City and County of San

11 Francisco, 512 F.3d 1112, 1115-16 (9th Cir. 2008). At the other

12 end, the moving party may succeed if it shows that it has raised

13 "serious legal questions" and that "the balance of hardships tips

14 sharply in its favor." Id. at 1116 (quoting Lopez, 713 F.2d at

15 1435). Finally, in certain cases, the court should consider whether

16 the issuance of the injunction would advance the public interest.

17 Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League, 634

18 F.2d 1197, 1200 (9th Cir. 1980).

19 **B.    Standard for Declaratory Relief**

20      Declaratory judgment is proper when it "will clarify and

21 settle the legal relations at issue and whether it will afford

22 relief from the uncertainty and controversy giving rise to the

23 proceedings." McGraw-Edison Co. v. Preformed Line Products Co., 362

24 F.2d 339, 342 (9th Cir.) (citing Borchard, Declaratory Judgments

25 299 (2d ed. 1941)), cert. denied, 385 U.S. 919 (1966). A court

26 declaration delineates important rights and responsibilities and

6

1   can be "a message not only to the parties but also to the public

2   and has significant educational and lasting importance." Bilbrey

3   by Bilbrey v. Brown, 738 F.2d 1462, 1471 (9th Cir. 1984). It is

4   warranted where the controversy at issue is compellingly immediate

5   and non-speculative. Id.

6                          **III. ANALYSIS**

7        Plaintiffs   seek   both   a   preliminary   injunction   and   a

8   declaratory   judgment   addressing   their   right   to   engage   in

9   communicative   activities   near   the   Stockton   Arena   during   the

10  Ringling Bros. engagement here. As discussed below, the court

11  concludes that, under the circumstances, a preliminary injunction

12  should issue but that any declaratory relief must await trial on

13  the merits or summary judgment, if appropriate. A declaration of

14  rights is a final judgment on the merits and thus must await

15  disposition on the merits. A preliminary injunction, on the other

16  hand, being preliminary, need not await final disposition.

17  **A.   Notice of the Scope of the Preliminary Injunction**

18       All defendants observe that plaintiffs did not file a proposed

19  order with a provision for a bond with their motion, as required

20  by   Local   Rule   65-231(d)(2)(iii).[4]   Defendants   contend   that

21  plaintiffs' motion should be denied for failing to comply with the

22  local rules and because, absent the draft order, plaintiffs' motion

23  is too vague to provide notice of to what areas plaintiffs seek

24  access.

25  _____

26       [4] The proposed order was filed on September 2, 2008, several
    days after defendants' oppositions were filed.

                                7

1    A court may not issue a preliminary injunction without notice
2    to the opposing party. Fed. R. Civ. P. 65(a)(1); see also Gray
3    Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Divers
4    Local No. 70, 415 U.S. 423, 433 n. 7 (1974) (explaining that Rule
5    65(a)'s requirement allows the opposing party "a fair opportunity
6    to oppose the application and prepare for such opposition"). The
7    court does not agree that the failure to include a proposed order,
8    while inconsistent with good practice, constitutes a lack of notice
9    to defendants as to what plaintiffs seek, so as to prevent
10   defendants from framing an effective response to the motion. It
11   appears from plaintiffs' motion and supporting documents that they
12   seek access to the areas outside the Stockton Arena, including the
13   queuing areas, and to the public streets around the Arena. The
14   proposed order that was filed on September 2 confirms that this is
15   the scope of the injunction sought by plaintiffs, and therefore it
16   appears that defendants were not prejudiced by the omission.

17   Plaintiffs are cautioned, however, that failure to adhere to
18   the local rules are grounds for sanctions, including, when
19   warranted, the dismissal of the action. See Local Rule 11-110.
20   Future instances of non-compliance will not be treated with similar
21   generosity.

22   **B.   Preliminary Injunction Against City of Stockton and Its**
23   **Employees**

24   **1.   Likelihood of Success On the Merits**

25   As described above, a preliminary injunction may issue only
26   upon plaintiffs' showing that both the likelihood of success on the

1   merits and the possibility of irreparable injury favor the

2   injunction's issuance, although those factors need not be present

3   to the same degree. <u>Golden Gate Restaurant Ass'n</u>, 512 F.3d at 1115-

4   16. Plaintiffs contend that the City of Stockton, Chris Trulsson,

5   and Michael Rishawn ("City defendants") infringed on plaintiffs'

6   free speech rights under the United States and California

7   Constitutions.  That assertion is considered first.

8       Under both the California and United States Constitutions,

9   "permissible restrictions on expression in public fora must be

10  content-neutral, be narrowly tailored to serve an important

11  government interest, and leave open ample alternative channels for

12  the communication of the message." <u>Kuba v. 1-A Agr. Ass'n.</u>, 387

13  F.3d 850, 856 (9th Cir. 2004). It appears from plaintiffs' motion

14  that their complaint against the City defendants concerns the

15  latter's blocking of certain public streets around the Arena.[5]

16  _____

17      [5]In their reply brief and at oral argument, plaintiffs raise
    for the first time the argument that by the City's acceptance of
18  IFG's citizens' arrests, an agency relationship existed between the
    City and IFG. Thus, they contend that the City is responsible for
19  any Constitutional violations perpetrated by IFG. It is improper
    for the court to rely on arguments raised in the first instance in
20  a reply brief. <u>See</u> <u>Von Brimer v. Whirlpool Corp</u>, 536 F.2d 838, 846
    (9th Cir. 1976). Nevertheless, the court cannot ignore the
21  implications of the facts asserted. If plaintiffs' contention is
    true and the City officers have a blanket policy of honoring
22  citizens arrests made by IFG for trespass, this presents additional
    concerns. Although this appears to lie outside the purview of the
23  complaint, a government entity may not delegate its police power
    to a private party. <u>See generally</u> <u>Stephens v. City of Vista</u>, 994
24  F.2d 650 (9th Cir. 1993), <u>as</u> <u>amended on denial of reh'g</u> (Aug. 4.
    1993). Additionally, it is unlawful for an officer to arrest
25  without probable cause or an arrest warrant, <u>Knox v. Southwest</u>, 124
    F.3d 1103, 1107 (9th Cir. 1997), which may render the City's policy
26  of accepting IFG's citizens arrests unconstitutional. <u>See</u>, <u>e.g.</u>,
    <u>Corcoran v. Fletcher</u>, 160 F. Supp. 2d 1085, 1092 (C.D. Cal. 2001).

Public streets are quintessential public fora. <u>Cornelius v. NAACP</u>
<u>Legal Defense and Educ. Fund</u>, 473 U.S. 788, 802 (1985).

    The dispositive issue, then, is whether the City defendants'
restrictions on plaintiffs' speech was content-neutral, narrowly
tailored to serve an important government interest, and left ample
alternative channels for communication. See <u>Kuba</u>, 387 F.3d at 856.
Here, the evidence tendered by plaintiffs of the City defendants'
restrictions on speech was the blocking of part of West Washington
Street on August 28, 2006 and officers' attempts to block the
plaintiffs from accessing a portion of the same street on September
12 and 16, 2007. Bolbol Decl. ¶¶ 6-10; Cuviello Decl. ¶¶ 6-10, 13.

    The evidence tendered reveals that, in 2006, a portion of the
street and sidewalk was blocked by posted officers and by a "No
Pedestrians" sign. Drake Decl. Ex. E (deposition of Deniz Bolbol
at 119:14-119:19). There is no direct evidence that the City
defendants' blocked plaintiffs' access to a portion of the street
based on the content of their speech, rather, it appears that
access by all pedestrians was restricted. According to plaintiffs'
declarations, however, they were there to videotape the animals
during the animals' walk to the Arena. See Cuviello Decl. ¶¶ 4-5;
Bolbol Decl. ¶¶ 4-5. See <u>Fordyce v. City of Seattle</u>, 55 F.3d at
436, 439 (9th Cir. 1995) (recognizing a First Amendment right under
the United States Constitution to "film matters of public
interest").

    The Stockton Police's Operations Order regarding the event,
however, refers to an expectation of the presence of animal rights

10

groups and activists.  The Order directs officers that "protesters must remain on public sidewalks or other public areas without obstructing vehicular or pedestrian traffic" and does not otherwise advise officers to restrict activists' activities. Drake Decl., Ex. C. It may, however, be reasonable to infer that individual police officers, after having been alerted to the possibility of animal rights activists, would have presumed plaintiffs to be videotaping them.  See Drake Decl., Ex. C (2006 Operations Order advising officers that animal rights activists "have gone so far as to videotape Officers confronting protesters"). Thus, it is possible, though not necessarily a finding, the City's street closure was directed, at least in part, at plaintiffs based on the content of plaintiffs' first amendment activities.

Even if the City's street closure was content-neutral, the plaintiffs contend that the defendants' restrictions on speech were not narrowly tailored to serve an important government interest. Defendants assert that the relevant portion of West Washington Street was closed "to reduce traffic congestion" and "to ensure the safety of the animals, walk participants, officers and the public." Defendants City of Stockton, Michael Rishwain, and Lt. Cris Trulsson's Opposition to Plaintiffs' Motion for Preliminary Injunction and Declaratory Relief, at 8-9. Prevention of traffic congestion and "ensuring the safety of pedestrians and drivers" are legitimate governmental interests. Kuba, 387 F.3d at 858; see also Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640 (1981); Foti v. City of Menlo Park, 146 F.3d 629 (9th Cir.

1  1998).

2      Nevertheless, mere invocation of legitimate interests is not
3  sufficient; the City "must also show that the proposed
4  communicative activity endangers those interests." <u>Kuba</u>, 387 F.3d
5  at 859. In <u>Kuba</u>, for example, the Ninth Circuit held that the mere
6  assertion of traffic flow and pedestrian safety was inadequate to
7  justify the denial of pedestrian access to the parking lots and
8  walkways immediately outside of an arena. <u>Id.</u> at 859-60. There, the
9  government had blocked off those areas when a circus or rodeo was
10 performing in the arena, based on the speculation that if
11 demonstrators were allowed in those areas, they would cause
12 "congestion and danger to safety." <u>Id.</u> at 860. Without some type
13 of showing, such as a history of past protestors causing such
14 dangerous congestion, the court concluded that the government had
15 not shown that public safety would be endangered by the "addition
16 of a handful of individuals" protesting immediately outside of the
17 arena. <u>Id.</u>

18     Here the City defendants contend that the portion of West
19 Washington Street at issue was closed during the time that Ringling
20 Bros. employees were walking the circus animals down the street,
21 from the Port of Stockton to the Arena. Drake Decl. Ex. B-D.
22 Plaintiffs describe that plaintiff Bolbol was barred from accessing
23 the portion of West Washington Street for fifteen to sixteen
24 minutes. Bolbol Decl. ¶ 5.

25     From all that appears, the City's restriction operated to deny
26 plaintiffs the very access that they desired so that they could

1  tape the animal walk. Just as the <u>Kuba</u> plaintiffs sought access to

2  the public for the purpose of distributing information, in the

3  present case the plaintiffs sought access to the "animal walk" in

4  order to videotape the condition and treatment of the animals. For

5  this reason, a factfinder could reasonably conclude that the City's

6  actions were not "narrowly tailored," as they circumscribed

7  precisely the type of speech activities the plaintiffs desired to

8  engage in, without sufficient justification. <u>See</u> <u>Kuba</u>, 387 F.3d at

9  863 (defendants' restrictions were not narrowly tailored because,

10 *inter alia*, they almost entirely prevented plaintiffs from

11 accessing the crowd). Moreover, like <u>Kuba</u>, the defendants have not

12 offered evidence that plaintiff's access to the blocked portion of

13 West Washington Street would create traffic congestion and endanger

14 public safety. Thus the defendants have not shown there was an

15 important government interest was threatened by plaintiffs'

16 actions. <u>See</u> <u>id.</u> at 860-61.

17      Given these circumstances, it appears, for purposes of the

18 preliminary injunction, that the City's safety concerns were only

19 speculative and their actions were not narrowly tailored to those

20 concerns. It may be that ultimately the City's safety concerns were

21 legitimate and well-founded, and that the denial of access to the

22 portion of West Washington Street was narrowly tailored to those

23 interests. Overall, however, on the present record, the court

24 concludes that the plaintiffs have a likelihood of success on the

25 merits of their claims against the City defendants.

26 ////

1        **2.   Possibility of Irreparable Injury**

2        The loss of First Amendment freedoms, even briefly,

3    constitute an irreparable injury. Elrod v. Burns, 427 U.S. 347, 373

4    (1976). In order to obtain an injunction, the plaintiff must show

5    that this irreparable injury is likely to recur. City of Los

6    Angeles v. Lyons, 461 U.S. 95, 102 (1983). Evidence of past

7    incidents alone is not enough, unless plaintiffs show that those

8    incidents were part of a policy or on-going pattern that continues

9    to threaten their rights. Id.; see also Allee v. Medrano, 416 U.S.

10   802, 815-16 (1974) (only a prevailing pattern of police misconduct,

11   not simply evidence of a few incidents, would merit an injunction

12   against state law enforcement); Thomas v. County of Los Angeles,

13   978 F.2d 504 (9th Cir. 1989) (reversing issuance of injunction

14   against the City, where there was insufficient evidence of a City

15   policy linked to officers' illegal conduct, although an extensive

16   record of individual incidents).

17       Here, the court agrees with plaintiffs that the activities

18   which they sought to engage in were speech, within the meaning of

19   the United States and California Constitutions, the impairment of

20   which would constitute an irreparable injury. See Fordyce, 55 F.3d

21   at 439.

22       The plaintiffs have also presented evidence from which the

23   court can conclude that there is some likelihood of the injury

24   recurring.[6] Plaintiffs have acknowledged that they were able to

25   ─────────────────

26       [6]Although defendants represent in their opposition that
     defendant Michael Rishwain is no longer Assistant City Attorney and

1  exercise their free speech rights without constraint during the
2  2007 circus performances at the Stockton Arena. Rizzardi Decl. ¶
3  9, Ex. D (deposition of Deniz Bolbol at 159:18-160:1); Drake Decl.
4  ¶ 7, Ex. E (deposition of Deniz Bolbol at 187:11-187:22). The
5  evidence before the court indicates that in 2007 the city
6  initiated a meeting with the plaintiffs and relevant City personnel
7  to discuss plaintiffs' ability to exercise their rights to free
8  speech during the 2007 circus and a commitment from Lt. Paoletti
9  to allow plaintiffs the access they sought. Cuviello Decl. ¶ 12;
10 see also Rizzardi Decl. ¶ 10.

11     Despite this, it is well-settled "'that an action for an
12 injunction does not become moot merely because the conduct
13 complained of was terminated, if there is a possibility of
14 recurrence, since otherwise the defendant's would be free to return
15 to [their] old ways.'" FTC v. Affordable Media, 179 F.3d 1228,
16 1237 (9th Cir. 1999) (quoting FTC v. Am. Standard Credit Sys.,
17 Inc., 874 F. Supp. 1080, 1087 (C.D. Cal. 1994)). In fact, although
18 the City in 2007 told the plaintiffs that they could have the
19 access that they were denied in 2006, this policy appears not to
20 have been uniformly implemented by all officers. See Cuviello Decl.
21 ¶¶ 12-14. This calls into question the efficacy of the City's
22 efforts at voluntary cessation and makes it appear not unlikely

23

24 Lieutenant Cris Trulsson is no longer Event Commander, they present
25 no evidence of this fact and the court does not rely on it.
   Moreover, there is no evidence that the conduct was the result of
26 rogue decisions by these two defendants rather than that they were
   expressing the city's policy.

15

1  that the deprivations that occurred in 2006 may recur in 2008.

2  ////

### 3.   Public Interest

Finally, the court considers whether the interest of the public generally is served by the issuance of the injunction. Los Angeles Memorial Coliseum Comm'n, 634 F.2d at 1200. The Ninth Circuit has recognized a significant public interest in the preservation of First Amendment freedoms. Sammartano v. First Judicial D.C., 303 F.3d 959, 974 (9th Cir. 2002).[7] This interest can be overcome by a particularly compelling state interest. Id. at 974-75.

Here, the public interest favors the issuance of a preliminary injunction. The plaintiffs seek to engage in speech protected under the First Amendment and if the City's actions in restricting that speech were unlawful, this represents a serious infringement on the interests of others, including persons who have been or may be deterred from lawfully exercising their First Amendment rights. See id. at 974. See id. Accordingly, the public interest would be served by granting the injunction.

Considering all the factors as a whole, the court is persuaded that plaintiffs have shown that the facts locate on a point in the continuum analysis at which an injunction is merited. See Lopez, 713 F.2d at 1435.  They have a fair or better chance of success on

---

[7] Indeed, it is somewhat dispiriting that the defendants seem to regard the First Amendment as an impediment to doing their "real" job, rather than as a duty they should gladly assume.

16

1  the merits. Although the evidence of the likelihood of the injury's

2  recurrence is equivocal, the possible injury is a loss of one of

3  a core freedom guaranteed by the Constitution. See Elrod, 427 U.S.

4  at 373. As such, the balance of hardships tips sharply in the

5  plaintiffs favor. See Lopez, 713 F.2d at 1435. All the above favors

6  the injunction's issuance against the City defendants.

7  **C.   Preliminary Injunction Against IFG**

8  **  1.   Likelihood of Success on the Merits**

9       Plaintiffs allege that IFG, through its employees, infringed

10  on plaintiffs' rights to free speech under the California

11  Constitution. See Plaintiffs' Motion for Preliminary Injunction and

12  Declaratory Relief at 12. California's Liberty of Speech provision

13  is more expansive than rights under the First Amendment of the

14  United States Constitution. Vernon v. City of Los Angeles, 27 F.3d

15  1385, 1391-92 (9th Cir. 1994), cert. denied 513 U.S. 1000. Unlike

16  its federal counterpart, the California constitution prohibits

17  private actors, not only the state, from infringing on the right

18  to free speech. Golden Gateway Center v. Golden Gateway Tenants

19  Ass'n., 26 Cal. 4th 1013, 1023 (2001). This prohibition extends to

20  those private actors who open their land to the public and, in so

21  doing, resemble state actors. Id. at 1031-32. Specifically, the

22  Liberty of Speech provision applies to private property that has

23  been made "freely and openly accessible to the public." Id. at 1034

24  (construing Robins v. Pruneyard Shopping Center, 23 Cal.3d 899 (9th

25  Cir. 1979)). This includes, for example, a shopping mall; it does

26  not include, for example, a secured apartment complex. Id. at 1032-

1  34.

2     Here, it seems apparent that the areas surrounding the

3  Stockton Arena at issue are encompassed by the state Liberty of

4  Speech provision. The areas around the Arena appear to be open to

5  the public generally and, unlike an apartment complex, are not

6  restricted to a certain few or for a certain purpose. See Golden

7  Gateway Center, 26 Cal. 4th at 1034. The normal activities that

8  would occur in these areas seems basically compatible with the

9  plaintiffs' communicative activity. Kuba, 387 F.3d at 857. As such,

10  the state Liberty of Speech provision applies to IFG vis-a-vis

11  plaintiffs' use of the areas surrounding the Stockton Arena.

12     Although the California Constitution applies to private

13  property as well as state property, the limitations on restrictions

14  of speech that can occur there borrow from federal jurisprudence.

15  Thus, as when state action is at issue, a private party may only

16  restrict speech where the restriction is "content-neutral, [is]

17  narrowly tailored to serve an important government interest, and

18  leave[s] open ample alternative channels for the communication of

19  the message." Kuba, 387 F.3d at 856.

20     Here, the plaintiffs have presented evidence that on two

21  occasions they were barred from accessing the pedestrian areas near

22  the Arena by IFG personnel. Cuviello Decl. ¶¶ 6-9; Bolbol Decl. ¶¶

23  6-11. See Drake Decl. Ex. F (deposition of Joseph Cuviello at

24  167:10-168:2) (describing the areas as "queuing areas"). Both

25  times, Bolbol was told that she could not access these areas

26  without a ticket. Bolbol Decl. ¶¶ 6-11. Both times, the plaintiffs

1   had signs, banners, and leaflets with them, from which one may

2   infer that IFG staff were aware of the content of plaintiffs'

3   message. Cuviello Decl. ¶¶ 6-9; Bolbol Decl. ¶¶ 6-11. It also

4   appears that IFG staff were categorical in their refusal to allow

5   plaintiffs onto the areas in question. See generally Cuviello Decl.

6   ¶¶ 6-9; Bolbol Decl. ¶¶ 6-11. Finally, there is no evidence

7   tendered to the court of the reason for IFG's restriction on

8   plaintiffs' access to these areas, let alone a showing that the

9   restrictions served an important state interest and were narrowly

10  tailored to that interest. See Kuba, 387 F.3d at 856.

11      Consequently, the plaintiffs have shown that there is a fair

12  chance of success on the merits. See Arcamuzi, 819 F.2d at 937.

13          **2.   Possibility of Irreparable Injury**

14      As described above, the loss or restriction of First Amendment

15  freedoms is an irreparable injury. Elrod, 427 U.S. at 373. As is

16  the case with the City defendants, however, the evidence regarding

17  the likelihood of recurrence is mixed. Plaintiffs have acknowledged

18  that in 2007 they were able to access all areas around the Arena

19  from which they had been blocked in 2006. Rizzardi Decl Ex. D. IFG

20  and the City took affirmative steps to ensure plaintiffs rights

21  were respected in 2007 and, by plaintiffs' own descriptions, no

22  infringement occurred that year. Rizzardi Decl. ¶¶ 9, 10; Drake

23  Decl. Ex. F (deposition of Joseph Cuviello at 167:21-168:21).

24  Nevertheless, as explained above, defendants' voluntary cessation

25  of the allegedly illegal actions is not a compelling reason to

26  refrain from issuing an injunction. FTC, 179 F.3d at 1237. Based on

19

1 the evidence tendered, the court concludes that plaintiffs have
2 shown at least a possibility of irreparable injury by IFG.

3    Taking this possibility together with the fair likelihood of
4 success on the merits, as well as the strong public interest
5 described in section III.B.3, *supra*, the court concludes that there
6 is an sufficient showing that a preliminary injunction should issue
7 here. The considerations for issuance of an injunction are, as
8 described above, a sliding scale. Lopez, 713 F.2d at 1435. Although
9 it is a closer question, the importance of the plaintiffs' and the
10 public interest at issue here tips the case onto that side of the
11 scale at which an injunction is warranted.

12                          **IV. CONCLUSION**

13    For the reasons stated herein, plaintiffs' motion for a
14 preliminary injunction (Docket No. 46) is GRANTED.

15    The court orders as follows:

16    1.    From September 18 through 21, 2008, plaintiffs shall be
17          permitted full access to the public fora surrounding the
18          Stockton Arena, including parking lots and public
19          walkways, without interference from International
20          Facilities Group or its agents or the City of Stockton or
21          its agents.

22    2.    From September 18 through 21, 2008, plaintiffs shall be
23          permitted full access to the public streets, including W.
24          Washington Street, of the City of Stockton, without
25          interference from International Facilities Group or its
26          agents or the City of Stockton or its agents.

3.    From September 18 through 21, 2008, plaintiffs shall be
      permitted to distribute leaflets and to videotape in any
      public streets and any public fora areas surrounding the
      Stockton Arena.

4.    Plaintiffs shall POST BOND in the amount of one hundred
      dollars ($100) within ten (10) days.

IT IS SO ORDERED.

DATED:  September 15, 2008.


                              LAWRENCE K. KARLTON
                              SENIOR JUDGE
                              UNITED STATES DISTRICT COURT